**1313UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NANCY REESE and RAMONA COLAMARCO individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SKINNY MIXES, LLC and NEW SKINNY MIXES, LLC,<br><br>Defendants. | Case No. 1:25-cv-06432-MMG<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Nancy Reese and Ramona Colamarco ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendants Skinny Mixes, LLC and New Skinny Mixes, LLC ("Defendants"). Plaintiffs make the following allegations pursuant to the investigations of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiffs bring this class action lawsuit on behalf of themselves and all others similarly situated who purchased Jordan's Skinny Mixes Flavored Syrups (the "Products").[1]

2. Defendants market the Products to health-conscious consumers, including those with diabetes, as a safe and healthy sugar-free syrup alternative.

3. However, sucralose, the sugar alternative in the Products, has been shown to be genotoxic, cause and worsen diabetes and obesity, and increase the risk for cardiovascular diseases

[1] The Products include any and all of the 80+ flavors of Jordan's Skinny Mixes Syrups that contain sucralose as a sugar alternative. The Products include the following Jordan's Skinny Mixes' sugar-free line of products: "Skinnyccino;" Sugar Free Coffee Syrups; Sugar Free Cocktail Mixes and Bar Syrups; Sugar Free Water Flavorings; Sugar Free Sauces; Sugar Free Tea and Lemonade Concentrates; and Sugar Free Soda Collection.

and cancer, among other harms. For instance, in May 2023, the World Health Organization advised against the consumption of sugar alternatives like sucralose, noting specifically the "increased risk of type 2 diabetes, cardiovascular diseases, and mortality in adults."[2]

4. Public service organizations, including the Center for Science in the Public Interest, likewise caution against the consumption of sucralose and identified it as a "high risk" ingredient due to studies linking sucralose to diabetes and blood cancers.[3]

5. Even worse, recent research suggests that sucralose metabolizes in the body into sucralose-6-acetate, a genotoxic compound.[4] Due to its genotoxicity, sucralose-6-acetate breaks up DNA and thereby increases the expression of genes associated with inflammation, oxidative stress, and cancer.[5]

6. However, Defendants' advertising and marketing tells consumers the opposite. Defendants market their Products as a healthy zero-sugar alternative to sugary drinks for health-conscious individuals, including diabetics. Defendants' marketing also implies that their Products are safe to consume, especially for diabetics and other people with sensitivities to sugar. And Defendants do not disclose to consumers the harmful effects of sucralose, do not disclose that the sucralose in the Products always breaks down into sucralose-6-acetate, and do not disclose the harmful effects of sucralose-6-acetate.

---

[2] *WHO Advises Not to Use Non-Sugar Sweeteners for Weight Control in Newly Released Guideline*, WHO (May 15, 2023), https://www.who.int/news/item/15-05-2023-who-advises-not-to-use-non-sugar-sweeteners-for-weight-control-in-newly-released-guideline.

[3] *Sucralose*, CTR. FOR SCI. IN THE PUB. INT. (last updated Jan. 4, 2021), https://www.cspinet.org/article/sucralose.

[4] Susan S. Schiffman, Elizabeth H. Scholl, Terrence S. Furey, and H. Troy Nagle, *Toxicological and pharmacokinetic properties of sucralose-6-acetate and its parent sucralose: in vitro screening assays,* J. OF TOXICOL. AND ENV. HEALTH, PART B 26:6, 309-10 (2023), https://www.tandfonline.com/doi/epdf/10.1080/10937404.2023.2213903?needAccess=true.

[5] *Id*. at 307.

7. Instead, Defendants capitalize on the fact that consumers, such as people with health and weight conditions, are inclined to pay more for products they believe as formulated to be "better for" them.[6] Thus, Defendants charge a price premium based on their representations of the Products as a healthier alternative and their omissions concerning sucralose's and sucralose-6-acetate's dangers.

8. But, because Defendants include sucralose in their Products' formula, the Products harm consumers by exposing them to sucralose-6-acetate and a host of adverse health effects that, among other things, are likely to increase the risk of obesity and cancer, as well as worsening diabetic symptoms. Defendants' representations and omissions are therefore material, false, and misleading.

9. Further underscoring the harm of Defendants' misleading representations to unsuspecting consumers is the rising rate of diabetes and prediabetes in the United States, having reached 37.3 million and 26.4 million, respectively.[7] This population depends on truthful labeling claims to make safe, informed choices to manage their health. Defendants' decision to instead prey on them for profit while knowingly ignoring the well-documented science on sucralose is unconscionable and is in contravention of New York law and policy.

10. Plaintiffs bring claims against Defendants individually and on behalf of a class of all others similarly situated for (i) violation of New York Gen. Bus. Law § 349; and (ii) violation of New York Gen. Bus. Law § 350.

---

[6] https://www.skinnymixes.com/pages/about

[7] *Diabetes Statistics*, DIABETES RSCH. INST., https://diabetesresearch.org/diabetes-statistics/ (last accessed May 14, 2025).

## THE PARTIES

### I. PLAINTIFF NANCY REESE

11. Plaintiff Nancy Reese is a citizen of New York who resides in New York, New York. Plaintiff Reese has purchased the Products for four years. Plaintiff Reese's most recent purchase was in June 2024 when she purchased the Trio of Skinny Syrups from Amazon while in New York. Plaintiff Reese is pre-diabetic and purchased the Product for her family household.

12. Prior to her purchase, Plaintiff Reese reviewed the images of the packaging and labeling, as well as Defendants' marketing of the Products, which represented the Products as a health-conscious alternative to sugary drink mixes. Nowhere on Defendants' packaging and in Defendants' marketing did Defendants disclose the dangers associated the sucralose in the Products, nor that the sucralose in the Products always breaks down into sucralose-6-acetate and the dangers associated with sucralose-6-acetate.

13. Thus, Defendants represented to Plaintiff Reese, and Plaintiff Reese understood, that the Products were a health-conscious alternative to sugary drink mixes. Further, Defendants did not disclose, and Plaintiff Reese therefore did not know, that the Products were in fact harmful to health due to the presence of sucralose and the sucralose-6-acetate that it breaks down into.

14. Defendants' misrepresentations and omissions were material to Plaintiff Reese in that she would not have paid as much for the Products as she did had Defendants divulged the harmful health ramifications of sucralose and sucralose-6-acetate. Thus, Plaintiff Reese was injured by the price premium she paid for the Products as a result of Defendants' misrepresentations and omissions.

### II. PLAINTIFF RAMONA COLAMARCO

15. Plaintiff Ramona Colamarco is a citizen of New York who resides in Watervliet, New York. Plaintiff Colamarco has purchased the Products for approximately two to three years,

with her most recent purchase being from a brick-and-mortar store in New York in April 2025. She has purchased, among other flavors, Italian Wedding Cake, Blueberry Cobbler, Genie, Double Fudge, and Salted Caramel. Plaintiff Colamarco purchased the Products for her family household, including for her daughter who is diabetic, and for other family members in the home who also experience weight and health issues.

16. Prior to her purchase, Plaintiff Colamarco reviewed the packaging and labeling, as well as Defendants' marketing of the Products, which represented the Products as a health-conscious alternative to sugary drink mixes. Nowhere on Defendants' packaging and in Defendants' marketing did Defendants disclose the dangers associated the sucralose in the Products, nor that the sucralose in the Products always breaks down into sucralose-6-acetate and the dangers associated with sucralose-6-acetate.

17. Thus, Defendants represented to Plaintiff Colamarco, and Plaintiff Colamarco understood, that the Products were a health-conscious alternative to sugary drink mixes. Further, Defendants did not disclose, and Plaintiff Colamarco therefore did not know, that the Products were in fact harmful to health based on the presence of sucralose and the sucralose-6-acetate that it breaks down into.

18. Defendants' misrepresentations and omissions were material to Plaintiff Colamarco in that she would not have paid as much for the Products as she did had Defendants divulged the harmful health ramifications of sucralose and sucralose-6-acetate. Thus, Plaintiff Colamarco was injured by the price premium she paid for the Products as a result of Defendants' misrepresentations and omissions.

## III. DEFENDANTS

19. Defendant Skinny Mixes, LLC is a Florida Limited Liability Company with its principal place of business in Clearwater, Florida. Defendant Skinny Mixes, LLC manufactures,

markets, sells, and distributes the Products throughout the contiguous United States, including in New York. Defendant Skinny Mixes, LLC manufactured, marketed, and sold the Products at issue from April 5, 2009, until January 1, 2019.

20. Defendant New Skinny Mixes, LLC is a Delaware Limited Liability Company with its principal place of business in Florida. Defendant New Skinny Mixes, LLC manufactures, markets, sells, and distributes the Products throughout the contiguous United States, including in New York. Defendant New Skinny Mixes, LLC currently manufactures, markets, and sells the Products at issue and has done so since January 1, 2019.

21. Defendants operate in concert and together derive the benefits from sales of the Products. Defendants operate jointly and are under the control of the same management and officers.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because there are more than 100 Class Members, the aggregate claims of all members of the proposed Class exceed $5,000,000.00, exclusive of interest and costs, and at least one Class Member is a citizen of a state different from at least one Defendant.

23. As LLCs, Defendants are each "unincorporated associations" under CAFA, and Defendants are therefore "citizen[s] of the State[s] where [they] ha[ve] [their] principal place[s] of business [*i.e.*, Florida] and the State[s] under whose laws [they are] organized [*i.e.*, Florida and Delaware]." See 28 U.S.C. § 1332(d)(10).

24. This Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves of the benefits of doing business in this District by marketing and

selling the Products to consumers in New York, such that Defendants derived substantial revenue from its sales of the Products to New York consumers.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events, omissions, and acts giving rise to at least one Plaintiffs' claims herein occurred in this District.

## FACTUAL ALLEGATIONS

### I. THE RISING OBESITY EPIDEMIC CREATES A MARKET FOR SUGAR-FREE DRINK MIXER ALTERNATIVES

26. Roughly 37.3 million Americans, or 1 in 10 Americans, have diabetes.[8] Diabetes is characterized by high blood sugar caused by the inability to produce enough insulin—a hormone that allows sugar to be removed from the blood stream and used for energy in the cells of the pancreas.[9]

27. The most common form of diabetes is Type 2 diabetes, which impairs the pancreas due to insulin resistance typically as a result of diet and lifestyle factors.[10] Insulin resistance means that the cells in the pancreas stop responding to insulin, which normally triggers the flow of glucose into the cells.[11]

---

[8] *Diabetes Statistics*, *supra* note 7~~9~~.

[9] *Diabetes Basics*, CDC, https://www.cdc.gov/diabetes/about/index.html (last accessed May 15, 2025).

[10] *Type 2 Diabetes*, CDC, https://www.cdc.gov/diabetes/about/about-type-2-diabetes.html (last accessed May 15, 2025).

[11] *About Insulin Resistance and Type 2 Diabetes*, CDC, https://www.cdc.gov/diabetes/about/insulin-resistance-type-2-diabetes.html (las accessed May 15, 2025).

28. When the cells become resistant, insulin is no longer able to signal glucose uptake, also known as the process in which the body absorbs sugar or glucose, so the glucose remains in the blood stream where it causes problems like organ failure and diabetes.[12]

29. People who suffer from Type 2 diabetes may be prescribed medicine but generally manage the disease via exercise and healthy eating. Accordingly, people with Type 2 diabetes seek out food products that are sugar-free, low in calories, and can help them manage their blood sugar.

30. In addition, obesity in America has skyrocketed. "Obesity is defined as having a body mass index (BMI) of 30.0 or higher. Severe obesity is defined as having a BMI of 40.0 or higher."[13] Between 2017 and 2020 "[t]he prevalence of obesity among U.S. adults aged 20 and over was 41.9%."[14] This is an increase of over 10% from the pre-y2k obesity numbers.[15]

31. Obesity has serious effects on a person's health. Many obese individuals suffer from chronic diseases including high blood pressure and heart disease.[16] Moreover, "23% of U.S. adults with obesity have diabetes."[17]

32. With the rising rates of diabetes and obesity in the United States, artificial sweeteners, like sucralose, have become significantly more popular. Sucralose was discovered in 1976 by chemists who were testing it for use as an insecticide. Because of its sweet taste, its potential as a food additive was explored.

---

[12] *Id.*

[13] *Adult Obesity Facts*, CDC, https://www.cdc.gov/obesity/adult-obesity-facts/index.html (last accessed May 16, 20225).

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

33. Sucralose is synthesized from sucrose, *i.e.*, sugar, but is approximately 600 times sweeter than normal sugar. Sucralose's defining characteristic is that it can provide sweetness with no calories.

34. As such, both people with and without diabetes have begun to opt for sucralose because they mistakenly believe it to be a healthier alternative to sugar that will help regulate and maintain healthy blood sugar levels and aid in the management of metabolic conditions such as diabetes and obesity.

## II. DEFENDANTS MARKET THE PRODUCTS AS A HEALTH-CONSCIOUS ALTERNATIVE TO SUGARY MIXES WHILE OMITTING THE DANGERS ASSOCIATED WITH THE PRODUCTS' INGREDIENTS, AND CHARGE A PRICE PREMIUM BASED ON THOSE REPRESENTATIONS AND OMISSIONS

35. Defendants capitalized on this rising popularity in sucralose and created the Products to provide a purported premium sugar-free zero calorie syrup sweetener to consumers. Defendants further still capitalize on consumers' lack of knowledge about sucralose and Defendants' claims that the Products are a health-conscious alternative to sugary drink mixers to charge consumers a price premium for their Products.

36. Defendants formulate, manufacture, market, and sell 80+ flavors of sugar-free syrups under the brand name Jordan's Skinny Mixes in their online store, www.skinnymixes.com, in brick-and-mortar stores, such as Walmart, and other online sites, such as Amazon.com.

37. Though Defendants' Products come in a variety of flavors, the Products are all substantially similar in that they:

(i) are all manufactured by Defendants;

(ii) are all sold under the brand name, Jordan's Skinny Mixes;

(iii) are syrups for use in hot or cold drinks including, but not limited to, coffee, water, cocktails, tea, and lemonade;

(iv) all contain sucralose;

(v) are labeled, marketed, and advertised with the Health Claims for the health-conscious individual seeking to manage their weight and/or diabetes;

(vi) are similarly packaged using similar styles for images and written content; and

(vii) are all marketed to mislead and induce consumers to overpay a premium, or otherwise purchase a Product, which claims to be for the health-conscious individual seeking to manage their weight and/or diabetes, despite the inclusion of sucralose that worsens or causes both diabetes and obesity, that they would not have purchased.

38. The Products are advertised as being "better-for-you" and as a safe and healthy sugar-free syrup alternative for health-conscious individuals seeking to manage their weight, including diabetics.

39. For instance, on Defendants' website, the Product pages contain the following description under the Product name: "ZERO SUGAR[;] ZERO CALORIES[;] ZERO CARBS[;] ZERO GUILT." Further, the Products provide a descriptor of the Product taste profile and emphasize that the Product can be consumed "without any of the guilt"[18] or can be consumed "without compromising your health goals."[19]

40. In addition, Defendants have dedicated a page on their website for diabetic consumers (www.skinnymixes.com/pages/diabetes). Defendants go as far as to say that their

---

[18] *Sugar Free Blueberry Cobbler Syrup*, JORDAN'S SKINNY MIXES, https://www.skinnymixes.com/products/sugar-free-blueberry-cobbler-syrup?_pos=1&_sid=f12e90ce8&_ss=r (last accessed Aug. 4, 2025).

[19] *Sugar Free Love Potion Syrup – Sugar Free Sour Watermelon Syrup*, JORDAN'S SKINNY MIXES https:// www.skinnymixes.com/products/sugar-free-love-potion-syrup (last accessed Aug. 4, 2025).

"Skinny Syrups are sugar-free so you can enjoy all the fun and flavor of your favorite beverages without spiking your blood sugar levels."[20]

41. On this page, Defendants again emphasize that their Products are "diabetic friendly[;] gluten free[;] and zero carbs" and highlight that consumers "can add our syrups to plain water."[21] Defendants also provide "Diabetic-Friendly Recipes" that consumers can create with Defendants' Products.




42. Likewise, in blog posts on Defendants' website, Defendants make representations that the Products are good for "[h]elping with weight-loss by helping you avoid those extra calories. Lowering your risk of type-2 diabetes or pre-diabetes. Balanced blood sugar levels, promoting more stable moods."[22]

43. Indeed, Defendants go as far to say its Products "are a great option if you're looking to stay healthy while keeping on your diet."[23]

44. Nowhere on Defendants' packaging, labeling, or Website do Defendants warn consumers about the dangers associated with sucralose or sucralose-6-acetate, described below.

---

[20] *Diabetic-Friendly Skinny Mixes and Syrups*, JORDAN'S SKINNY MIXES https://www.skinnymixes.com/pages/diabetes (last accessed Aug. 4, 2025).

[21] *Id.*

[22] Admin Staff, *Are Skinny Syrups Bad For You?*, JORDAN'S SKINNY MIXES (May 05, 2022), https://www.skinnymixes.com/blogs/inspiration/are-skinny-syrups-bad-for-you.

[23] *Id.*

45. In short, Defendants have positioned their Products as a healthier or safer alternative to sugar-based mixers, including for diabetics. And Defendants charge a price premium to consumers based on their representations and omissions positioning their Products as health-conscious alternatives to sugary drink mixes.

46. As discussed below, Defendants' positioning of its Products is false because they contain sucralose, which always breaks down into sucralose-6-acetate. Both are associated with significant health issues. Thus, consumers are paying more for the Products than they otherwise would as a result of Defendants' representations and omissions.

## III. SUCRALOSE—AND THE SUCRALOSE-6-ACETATE IT BREAKS DOWN INTO WHEN INGESTED—IS DANGEROUS TO HEALTH

47. "[D]espite the reassuring claims surrounding artificially sweetened products, there is growing evidence that the consumption of [artificially-sweetened beverages] may not be totally healthy for humans."[24]

### A. The Dangers Associated With Sucralose

48. Each of the Products contains sucralose as an ingredient, which has been shown to induce and worsen metabolic syndrome, obesity, and Type 2 diabetes itself by interfering with bodily responses responsible for controlling glucose and energy homeostasis.[25]

---

[24] Cristina Diaz et al., *Artificially Sweetened Beverages and Health Outcomes: An Umbrella Review*, 14(4) ADVANCES IN NUTRITION 710, 710 (July 2023), https://www.sciencedirect.com/science/article/pii/S2161831323003150?via%3Dihub.

[25] M. Yanina Pepino, *Metabolic Effects of Non-Nutritive Sweeteners*, 152 PHYSIOLOGY AND BEHAVIOR 450, 450 (Dec. 1, 2015), https://www.sciencedirect.com/science/article/pii/S0031938415003728#bb0215.

49. For instance, the ingestion of sucralose causes blood sugar destabilization by triggering an abnormally high reaction to glucose, causing it to irrationally spike after consuming an otherwise normal meal.[26]

50. Moreover, studies indicate sucralose consumption can lead to increased glucose and insulin levels, directly the opposite of what diabetics and those seeking sugar-free drinks need.[27]

51. Likewise, sucralose has been shown to induce and worsen metabolic syndrome, obesity, and Type 2 diabetes.[28] A recent study of 105,588 participants conducted in July 2023 found that as compared to non-consumers of sucralose, those who consume sucralose had a higher risk of developing adverse conditions related to glucose metabolism, including insulin resistance syndrome, a precondition to Type 2 diabetes.[29]

52. Similarly, a May 2023 study found that consumption of artificially sweetened beverages, which include beverages sweetened by sucralose, is associated with a higher risk of obesity, Type 2 diabetes, hypertension, cardiovascular disease incidence, and all-cause mortality.[30]

---

[26] M. Yanina Pepino et al., *Sucralose Affects Glycemic and Hormonal Responses to an Oral Glucose Load*, 36(9) DIABETES CARE 2530, 2530-34 (Apr. 30, 2013), https://pubmed.ncbi.nlm.nih.gov/23633524/.

[27] Pepino, note 25~~27~~; *see also* Pepino et al., *supra* note 26~~28~~.

[28] Pepino, *supra* note 25~~27~~.

[29] Charlotte Debras et al., *Artificial Sweeteners and Risk of Type 2 Diabetes in the Prospective NutriNet-Sante Cohort*, 46(9) DIABETES CARE 1681, 1681 (July 25, 2023), https://pubmed.ncbi.nlm.nih.gov/37490630/.

[30] Diaz et al., *supra* note 24~~26~~.

53. Sucralose has also been found to decrease insulin sensitivity, thereby causing the body to be more resistant to insulin, and to absorb more sugar from the bloodstream.[31] This can cause an at-risk pancreas, like in someone who is prediabetic or already has diabetes, to work even harder, pumping more and more insulin resulting in the cells becoming more resistant.[32] Over time, the pancreas can shut down and the cells no longer respond to insulin (*i.e.*, insulin resistance) which can cause high blood sugar and diabetes.[33]

54. Moreover, insulin resistance caused by sucralose also can impact individuals with no pre-existing health conditions. A 2018 study tested sucralose consumption at the 15% Acceptable Daily Intake (ADI) in healthy participants and found a significant decrease in insulin sensitivity.[34]

55. Similarly, a study from 2017 found that after only two weeks of daily sucralose intake, the body's blood glucose response to external glucose was negatively affected, thereby detrimentally impacting glycemic control, and causing an otherwise healthy adult to be predisposed to diabetes.[35]

---

[31] Yanina M. Pepino, *The Not-So Sweet Effects of Sucralose on Blood Sugar Control*, 108(3) THE AM. J. OF CLINICAL NUTRITION 431, 431-432 (Sept. 2018), https://www.sciencedirect.com/science/article/pii/S0002916522029665?via%3Dihub.

[32] Kushagra Mathur et al., *Effect of Artificial Sweeteners on Insulin Resistance Among Type-2 Diabetes Mellitus Patients*, 9 J. FAM. MED. PRIM. CARE 69, 69 (2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7014832/.

[33] *Type 2 Diabetes*, *supra* note 10~~12~~.

[34] Alonso Romo-Romo et al., *Sucralose Decrease Insulin Sensitivity in Healthy Subjects: A Randomized Controlled Trial*, 108 AM. J. OF CLINICAL NUTRITION485, 485 (Sept. 1, 2018), https://pubmed.ncbi.nlm.nih.gov/30535090/.

[35] Richard Young et al., *Impact of Artificial Sweeteners on Glycaemic Control in Healthy Humans*, EUR. ASS'N FOR THE STUDY OF DIABETES, (Sept. 14, 2017), https://www.easd.org/media-centre/home.html#!resources/impact-of-artificial-sweeteners-on-glycaemic-control-in-healthy-humans

56. Other studies have shown that even consuming a small dose of sucralose increased the amount of insulin in the blood to an unhealthy level (known as hyperinsulinemia) in otherwise healthy participants.[36]

57. In addition, sucralose causes harm to the gut microbiome by causing gut dysbiosis (an imbalance between the good and bad bacteria in the gut) and gut inflammation.[37] These impacts on the gut can worsen insulin resistance, promote obesity, and increase sugar cravings.[38] What's worse, this increase in sugar cravings can lead to overconsumption of food, thereby causing weight gain and obesity.[39]

58. In sum, the presence of sucralose in the Products renders them immensely harmful to consumers despite their health-conscious positioning, and without any warnings of the same.

**B. The Dangers of Sucralose-6-Acetate**

[36] Angelica Y. Gomez-Arauz et al., *A Single 48mg Sucralose Sip Unbalances Monocyte Subpopulations and Stimulates Insulin Secretion in Healthy Young Adults*, J. IMMUNOL RSCH. (Apr. 28, 2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6512026/.

[37] Susan S. Schiffman & Kristina I. Rother, *Sucralose, A Synthetic Organochlorine Sweetener: Overview of Biological Issues*, 16 J. OF TOXICOLOGY AND ENV'T HEALTH 399, 399 (Nov. 12, 2013), https://www.tandfonline.com/doi/pdf/10.1080/10937404.2013.842523?noFrame=true.

[38] Clare J. Lee et al., *Gut Microbiome and Its Role in Obesity and Insulin Resistance*, 1461(1) ANNALS OF THE N.Y. ACAD. OF SCI. 37, 37 (May 14, 2019), https://pubmed.ncbi.nlm.nih.gov/31087391/.

[39] Qing Yang, *Gain Weight by "Going Diet?" Artificial Sweeteners and the Neurobiology of Sugar Cravings*, 83 YALE J. OF BIOLOGY AND MED. 101, 101 (2010), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2892765/; Qiao-Ping Wang, et al., *Sucralose Promotes Food Intake Through NPY and a Neuronal Fasting Response*, 24 CELL METABOLISM 75, 75 (2016), https://www.cell.com/cell-metabolism/comments/S1550-4131(16)30296-0#secsectitle0010.

59. Further compounding the harms caused by the Products is that the sucralose in the Products is always metabolized into sucralose-6-acetate in the intestines.[40] And sucralose-6-acetate is even more harmful than sucralose itself.

60. Studies have found that sucralose-6-acetate is genotoxic, meaning it breaks up DNA strands, causing irreparable damage to a person's DNA.[41] A single sucralose-sweetened drink might have enough of this impurity from the manufacturing process to far exceed the safe daily amount of consumption.[42]

61. Further, intestines exposed to sucralose-6-acetate showed increased activity in genes associated with inflammation, oxidative stress, and cancer risk.[43]

62. Indeed, a 2020 study conducted on mice that consumed 1.5 mg of sucralose in water, just like how some of the Products are used, over the course of 6-weeks found that sucralose caused an increase in the number and size of cancerous colon tumors.[44]

63. Other studies have found that sucralose used at high temperatures, typically over 200 F–around the temperature of a hot coffee similar to what the Products would be used in–can

---

[40] Susan S. Schiffman, Elizabeth H. Scholl, Terrence S. Furey, and H. Troy Nagle, *Toxicological and Pharmacokinetic Properties of Sucralose-6-acetate and its Parent Sucralose: in vitro screening assays,* 26(6) J. OF TOXICOLOGY AND ENV. HEALTH 307, 307 (2023), https://www.tandfonline.com/doi/epdf/10.1080/10937404.2023.2213903?needAccess=true.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] Xueting Li et al., *Sucralose Promotes Colitis-Associated Colorectal Cancer Risk in a Murine Model Along with Changes in Microbiota*, 10 FRONTIERS IN ONCOLOGY, June 2020, at 1, https://www.frontiersin.org/journals/oncology/articles/10.3389/fonc.2020.00710/full.

lead to the formation of toxic or carcinogenic organic compounds that lead to diseases such as cancer, liver, and kidney damage.[45]

64. Thus, although the Products may not contain sucralose-6-acetate, a person is still always exposed to sucralose-6-acetate and its harmful effects because, by virtue of containing sucralose, the body still will produce sucralose-6-acetate when sucralose is ingested. This too rebuts Defendants' health-conscious claims and positioning and is a material omission from the Products' packaging.

## IV. PLAINTIFFS AND CLASS MEMBERS WERE INJURED BY DEFENDANTS' MISREPRESENTATIONS AND OMISSIONS

65. To summarize the preceding allegations, Defendants have capitalized on the need for sugar-free alternatives by manufacturing and selling the Products, which contain sucralose instead of sugar. Defendants position the Products as a health-conscious alternative to sugary drink mixes and charge price premium based on those representations. And, Defendants do not disclose that sucralose is always metabolized into sucralose-6-acetate once ingested, do not disclose the harmful effects associated with either compound, and charge a price premium based on those omissions as well.

66. However, multiple studies have found sucralose is harmful and not a health-conscious alternative to sugar. More problematically, sucralose always breaks down into sucralose-6-acetate when consumed, and sucralose-6-acetate is even more harmful to consumers

[45] *See generally*, Andreas Eisenreich et al., *Heating of Food Containing Sucralose Might Result in the Generation of Potentially Toxic Chlorinated Compounds*, 321 FOOD CHEM. (Aug. 15, 2020), https://pubmed.ncbi.nlm.nih.gov/32278984/; Diogo N. de Oliveria et al., *Thermal Degradation of Sucralose: A Combination of Analytical Methods to Determine Stability and Chlorinated Byproducts*, 5 SCI. REPS., Apr. 2015, https://www.nature.com/articles/srep09598.pdf.

than the sucralose it comes from. Defendants' representations and material omissions are thus false and misleading.

67. Defendants, as manufacturers or parties to a contract to manufacture, thereby providing and approving Product designs and formulas, and as the sellers and advertisers of the Products, are best situated to set the price of their Products and to know the content of the Products. Defendants knew or should have known the harmful effects of sucralose when consumed, including that it breaks down into sucralose-6-acetate, which is also harmful. Nonetheless, Defendants decided to charge a price premium for the Products by concealing and affirmatively misrepresenting the true nature of the Products, as discussed herein.

68. Defendants knew, or should have known, that their claims were false, misleading, deceptive, and unlawful at the time that Defendants manufactured, marketed, advertised, labeled, and sold the Products to Plaintiffs and the Class. Defendants intentionally and deliberately used their representations and omissions to cause Plaintiffs and similarly situated consumers to purchase the Products and pay a price premium for them. Defendants, as the manufacturers, had exclusive control over how the Products were formulated, marketed and labeled, and priced, and Defendants readily and easily could have remedied the deception by not positioning the Products as a health-conscious alternative, disclosing the dangers of sucralose and the dangers and presence (when ingested) of sucralose-6-acetate and by not charging a premium for their Products. Instead, Defendants deliberately chose to market the Products as a safe and healthy sugar-free syrup alternative for health-conscious individuals seeking to manage their weight, thereby misleading and inducing consumers into buying and overpaying for the Products. Thus, Defendants knew, or should have known, at all relevant times, that its representations and omissions misled reasonable

consumers, such as Plaintiffs, into buying the Products and paying more than they otherwise would have, to attain the product attributes that Defendants falsely advertised and warranted.

69. Defendants' representations and omissions are material to reasonable consumers, including Plaintiffs, because consumers, especially those with diabetes or pre-diabetes, seek healthier alternatives for foods and ingredients that will allow them to maintain their metabolic health and regulate their blood sugar levels and specifically seek healthier alternatives to sugar. Consequently, Defendants' representations and omissions have the potential to influence consumers' decision to not only purchase the Products, but pay a price premium for them, including Plaintiffs, as set forth herein. Indeed, Plaintiffs did rely on Defendants' representations and omissions that the Products were a safe and healthier sugar-free mix alternative.

70. Plaintiffs and Class Members were injured by Defendants' practices in that, had Defendants not falsely positioned their Products as a healthier alternative to sugary drink mixes, Plaintiffs would not have paid as much for the Products as they did.

71. Likewise, Plaintiffs and Class Members were injured by Defendants' practices in that, had Defendants disclosed that the sucralose in the Products breaks down into sucralose-6-acetate and had Defendants disclosed the harmful effects of sucralose and sucralose-6-acetate, Plaintiffs and Class Members would not have paid as much for the Products as they did.

72. Accordingly, Plaintiffs and Class Members were injured by the price premium they paid for the Products as a result of Defendants' misrepresentation and material omissions.

## CLASS ALLEGATIONS

73. Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Plaintiffs seek to represent a class defined as all persons who, during the applicable statute of limitations period, purchased in the

State of New York any of Defendants' Products for personal, family, or household purposes (the "Class").

74. Excluded from the Class are: (1) persons who made such purchases for the purpose of resale; (2) any Judge or Magistrate presiding over this action and any members of their families; (3) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; and (4) Plaintiffs' counsel and Defense counsel.

75. ***Numerosity.*** At this time, Plaintiffs do not know the exact number of members of the aforementioned Class. However, given the size of Defendants' business, Plaintiffs believe that Class Members are so numerous that joinder of all members is impracticable.

76. There is a well-defined community of interest in the questions of law and facts involved in this case. Questions of law and fact common to members of the Class that predominate over questions that may affect individual Class Members include:

(i) Whether the presence of sucralose and sucralose-6-acetate in the Products renders them harmful to health;

(ii) Whether Defendants misrepresented and/or failed to disclose material facts concerning the Products; and

(iii) Whether Plaintiffs and the Class sustained damages, and if so, the proper measure of those damages.

77. ***Typicality.*** The claims of the named Plaintiffs are typical of the claims of the Class because the named Plaintiffs, like other members of the Class, purchased the Products relying on the representations and omissions made by Defendants and were exposed to the same packaging and labeling as all other Class Members, and paid a price premium because of Defendants' misrepresentations and omissions.

78. ***Adequate Representation.*** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class Members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

79. ***Superiority.*** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the members of the Class. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of liability issues.

## CAUSES OF ACTION

### COUNT I
### Violation Of New York General Business Law § 349

80. Plaintiffs incorporate the forgoing allegations as if fully set forth herein.

81. Plaintiffs bring this claim on behalf of themselves and the Class against Defendants.

82. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in" New York. "To establish a prima facie case under GBL § 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were

directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) (cleaned up).

83. Defendants positioned and represented the Products to Plaintiffs and Class Members—who are consumers—as a health-conscious alternative to sugary drink mixes. However, those representations were not true in that the presence of sucralose in the Products renders the Products harmful and deleterious to health. Likewise, sucralose always breaks down into sucralose-6-acetate, which is also harmful and deleterious to health.

84. Defendants did not disclose on the Products' packaging, labeling, or anywhere else to Plaintiffs and Class Members that the presence of sucralose in the Products renders the Products harmful and deleterious to health. Likewise, Defendants did not disclose on the Products' packaging, labeling, or anywhere else to Plaintiffs and Class Members that (i) the sucralose in the Products always breaks down into sucralose-6-acetate when ingested, and (ii) that sucralose-6-acetate is harmful and deleterious to health.

85. Defendants' misrepresentations and omissions were material in that Plaintiffs and Class Members would not have paid as much for the Products as they did but for Defendants' failure to disclose and misrepresentations concerning the harmful effects of sucralose and sucralose-6-acetate. The representations and omissions here were particularly material because Defendants position their Products as healthier alternatives to sugary drinks and as safe for those with diabetes to consume, notwithstanding this materiality is present across all Class Members.

86. As a direct and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Plaintiffs and Class Members were injured in that they would not have paid as much for the Products as they did but for Defendants' but for Defendants' failure to

disclose and misrepresentations concerning the harmful effects of sucralose and sucralose-6-acetate.

87. On behalf of themselves and the Class, Plaintiffs seek to recover their actual damages (in an amount to be determined at trial) or fifty (50) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees. GBL § 349(h).

**COUNT II**
**Violation Of New York General Business Law § 350**

88. Plaintiffs hereby incorporate the foregoing allegations as if fully stated herein.

89. Plaintiffs bring this claim on behalf of themselves and the Class against Defendants.

90. GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in" New York. "The same analysis [for GBL § 349 claims] applies to false advertising claims brought under Section 350." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409.

91. GBL § 350-a defines "false advertising" in relevant part, as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

92. Each of Defendants' acts, as described above, constitute unlawful, deceptive, and fraudulent business acts and practices.

93. Plaintiffs and the members of the Class are consumers who purchased Defendants' Products in New York.

94. As a seller of goods to the consuming public, Defendants are engaged in the conduct of business, trade, or commerce, within the intended ambit of § 350.

95. Defendants positioned and represented the Products to Plaintiffs and Class Members—who are consumers—as a health-conscious alternative to sugary drink mixes. However, those representations were not true in that the presence of sucralose in the Products

renders the Products harmful and deleterious to health. Likewise, sucralose always breaks down into sucralose-6-acetate, which is also harmful and deleterious to health.

96. Defendants did not disclose on the Products' packaging, labeling, or anywhere else to Plaintiffs and Class Members that the presence of sucralose in the Products renders the Products harmful and deleterious to health. Likewise, Defendants did not disclose on the Products' packaging, labeling, or anywhere else to Plaintiffs and Class Members that (i) the sucralose in the Products always breaks down into sucralose-6-acetate when ingested, and (ii) that sucralose-6-acetate is harmful and deleterious to health.

97. Defendants' misrepresentations and omissions were material in that Plaintiffs and Class Members would not have paid as much for the Products as they did but for Defendants' failure to disclose and misrepresentations concerning the harmful effects of sucralose and sucralose-6-acetate. The representations and omissions here were particularly material because Defendants position their Products as healthier alternatives to sugary drinks and as safe for those with diabetes to consume, notwithstanding this materiality is present across all Class Members.

98. As a direct and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Plaintiffs and Class Members were injured in that they would not have paid as much for the Products as they did but for Defendants' but for Defendants' failure to disclose and misrepresentations concerning the harmful effects of sucralose and sucralose-6-acetate.

99. On behalf of themselves and Class Members, Plaintiffs seek to recover their actual damages (in an amount to be determined at trial) or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees. GBL § 350-e(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants as follows:

(i) For an order certifying the Class under Fed. R. Civ. P. 23, naming Plaintiffs as representatives of the Class, and naming Plaintiffs' attorneys as Class Counsel to represent the Class;

(ii) For an order declaring that the Defendants' conduct violates the statutes referenced herein;

(iii) For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(iv) For compensatory, statutory, and punitive damages in the amounts to be determined by the Court and/or jury;

(v) For prejudgment interest on all amounts awarded; and

(vi) For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all claims so triable.

Dated: September 24, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Max S. Roberts*
Max S. Roberts

Max S. Roberts
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*Pro Hac Vice Forthcoming*)
Ryan Martin (*Pro Hac Vice Forthcoming*)
1990 North California Boulevard, 9th Floor
Walnut Creek, CA 94596

Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

*Attorney for Plaintiffs*